FILED
GREAT ﹖﹖﹖﹖ ﹖﹖

2012 APR 10 AM 9 29

﹖﹖﹖K E. DUFFY, CLERK
BY _____
DEPUTY CLERK



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

## GREAT FALLS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Nos. CR-07-31-GF-SEH |
| | ) | CV-09-33-GF-SEH |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CODY GORDON CARLSEN, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## INTRODUCTION

Defendant/Movant Cody Carlsen (Carlsen) has moved to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. On August 30, 2011, the Ninth Circuit Court of Appeals remanded the matter for an evidentiary hearing on the issue of equitable tolling. The Ninth Circuit also required the Court, even if the facts do not support equitable tolling, to "state what sentence it would have imposed if it had granted Carlsen's § 2255 motion." Mem. at 8, United States v. Carlsen, No. 09-35857 (9th Cir. July 6, 2011) (*per curiam*) (unpublished mem. disp.) (Doc. 47).

The evidentiary hearing was held over two days, on November 9 and December 15, 2011. The matter is ripe for resolution.

## DISCUSSION

Carlsen's § 2255 motion alleges ineffective assistance of counsel arising from his attorney failing to assert that U.S.S.G. § 5G1.3(b) recommended imposition of a concurrent sentence under the circumstances of his offense, as well as a reduction of the sentence to account for time spent in federal custody prior to the sentencing date. Mot. § 2255 (Doc. 32-1) at 1-6, 8. He also alleges ineffective assistance in connection with his decision to plead guilty and for counsel's failure to file a motion to suppress the firearms found in his possession. Id. at 6, 7. However, he has not alleged any specific facts in support of the latter claims, nor has counsel moved to amend the motion. Accordingly, those claims will be disregarded.

## I. Timeliness of the § 2255 Motion

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year limitations period applies to motions for postconviction relief filed by federal prisoners under 28 U.S.C. § 2255, and to state prisoners seeking relief under 28 U.S.C. § 2254. The date on which the limitations period commences is set by statute. 28 U.S.C. §§ 2255(f), 2244(d)(1); Lee v. Lampert, 653 F.3d 929, 933 (9th Cir. 2011) (*en banc*). "[A] court must first determine whether a petition was

untimely under the statute itself" before considering whether there is a need for equitable tolling. Jorss v. Gomez, 311 F.3d 1189, 1192 (9th Cir. 2003).

A state or federal prisoner who files out-of-time may be entitled to equitable tolling[1] "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, ___ U.S. ___, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted); see also Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283 (9th Cir. 1997),[2] cited with approval in Holland, 130 S. Ct. at 2564; United States v. Battles, 362 F.3d 1195, 1196 (9th Cir. 2004) (holding that equitable tolling applies to § 2255 motions in the same way it applies to state petitions under §§ 2254 and 2244). Extraordinary circumstances must "proximately cause[] the late filing." Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003). The prisoner bears the burden of showing that equitable tolling is appropriate. Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

Carlsen claims that he is entitled to equitable tolling because his lack of access to legal resources or his trial counsel's conduct, or both, constituted an "extraordinary

---

[1] "Statutory tolling" under 28 U.S.C. § 2244(d)(2) applies only to state prisoners, and is not relevant to a § 2255 motion.

[2] Beeler was overruled on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). Kelly was itself abrogated by Woodford v. Garceau, 538 U.S. 202, 206 (2003). Beeler remains good law.

3

circumstance" that prevented him from filing on time. Although Carlsen apparently concedes that his motion is untimely under the statute, some of his equitable tolling arguments might be said to support an alternative commencement date for the limitations period under 28 U.S.C. § 2255(f). Therefore under Jorss, the Court will consider both the commencement date and equitable tolling.

### A.    **Statutory Commencement Date**

28 U.S.C. § 2255(f) defines the date on which the limitations period begins to run:

The limitation period shall run from the latest of –

1.    the date on which the judgment of conviction becomes final;

2.    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The Court of Appeals' recent *en banc* decision in Lee follows Holland in distinguishing these "triggering events" from facts that may support equitable tolling.

4

Lee, 653 F.3d at 933.

Generally, a § 2255 motion must be filed within one year of the date the prisoner's conviction becomes final. 28 U.S.C. § 2255(f)(1). Judgment was entered against Carlsen on November 15, 2007. Minutes (Doc. 28). Carlsen's opportunity for direct appeal was exhausted when the time to file a notice of appeal expired, on November 29, 2007. Fed. R. App. P. 4(b)(1)(A)(i) (2007); Clay v. United States, 537 U.S. 522, 532 (2003); Griffith v. Kentucky, 479 U.S. 314, 321 n. 6 (1987). If the general rule of § 2255(f)(1) applies, the limitations period was triggered on November 29, 2007. Fed. R. Civ. P. 6(a)(1)(A); Patterson v. Stewart, 251 F.3d 1243, 1246-47 (9th Cir. 2001).

An alternative start date might apply if, at the time his conviction became final, Carlsen was unable to file anything due to "an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(f)(2). The record clearly establishes that no such alternative date applies here.

### i). **Access to Legal Resources**

The Constitution requires prisons and jails to provide prisoners with legal information sufficient to permit them to access the courts for the purposes of challenging their convictions or their conditions of confinement. Access may take

5

the form of legal advice from persons trained in the law or law libraries containing the pertinent information, but adequate resources must include (1) "a source of current legal information . . . so that prisoners could learn whether they have claims at all, as where new court decisions might apply retroactively to invalidate convictions," Bounds v. Smith, 430 U.S. 817, 826 n.14 (1977); (2) substantive and procedural information to allow prisoners to file "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights" and to "raise heretofore unlitigated issues" in their cases, Bounds, 430 U.S. at 827; (3) procedural information sufficient to enable prisoners to "avoid being thrown out of court" for failure to comply with basic requirements such as the limitations period, Whalem/Hunt v. Early, 233 F.3d 1146, 1149 (9th Cir. 2000) (*en banc*) (*per curiam*) (Tashima, J., concurring); and (4) reasonable access to case files, including "appellate briefs previously written on their behalf, trial transcripts, and often intermediate appellate court opinions to use in preparing petitions for further review," Bounds, 420 U.S. at 827.

However, "delays in receiving legal materials or legal assistance" for "as long as 16 days"[3] "are not of constitutional significance," "so long as [the delays] are the

---

[3] The Court did not set 16 days as an outer limit. It was referring to a factual finding by a district court.

6

product of prison regulations reasonably related to legitimate penological interests," Lewis v. Casey, 518 U.S. 343, 362 (1996), even if those delays actually prevent prisoners from filing timely collateral attacks. Id. at 362. Intermittent access to legal information is adequate access, provided prisoners retain the general capacity to research and present their cases. Similarly, only if a prisoner's transfers among detention centers "altogether prevented him from presenting his claims in *any* form, to *any* court," Ramirez v. Yates, 571 F.3d 993, 1001 (9th Cir. 2009) (emphasis in original) is the prisoner is entitled to a later start date under § 2255(f)(2). This is "a far higher bar than that for equitable tolling." Ramirez, 571 F.3d at 1000.

With the above precepts in mind, and based on the parties' exhibits and the testimony at the hearing, the Court finds the facts established to be:

1.   Carlsen had no "*pro se* order." Consequently, according to the testimony of Keith Kaululaau, operations chief at the Cascade County Detention Facility, he would not have been given access to that facility's legal resources had he requested it. See also Def. Ex. D (Doc. 66-1). Carlsen was housed there, however, only until November 26, 2007, Gov't Ex. 1, which was before his conviction became final.

2.   Carlsen was housed at Crossroads Correctional Center in Shelby, Montana, from November 26, 2007, until December 4, 2007. Gov't

7

Ex. 1. Correctional Officer John Weaver, chief of unit management at that facility, testified that both Title 28 of the United States Code, which contains 28 U.S.C. § 2255, and the United States Sentencing Guidelines were available at Crossroads, either in book form or on CD. Although Carlsen testified that the librarian told him the facility's contract required it to provide only state legal materials, not federal, he produced no evidence that this statement meant the library did not have federal materials. Any such claim was contradicted by Chief Weaver. Further, Carlsen produced no evidence showing that he sought access to the law library at Crossroads while he was there. Nor did he file a grievance alleging lack of access or lack of federal law. Carlsen failed to carry his burden of proof. By contrast, the United States clearly established that Crossroads provided access and federal materials.

3.      On December 4, 2007, Carlsen was returned to Cascade County, where he waited three days for transport to FTC Oklahoma City. He was then detained in Oklahoma, awaiting further transport, from December 6, 2007, through January 7, 2008. During that time, according to the testimony of John Bellantoni, who is employed by and familiar with law library access at federal facilities, Carlsen had access to the entire

United States Code Service, necessarily including 28 U.S.C. § 2255 and the Sentencing Guidelines. Carlsen testified that he was not told legal resources were available, but he did not testify that he asked for them. The Court finds he did not ask, but adequate legal resources were in fact available.

4.  On January 8, 2008, Carlsen arrived at the James River Correctional Center in North Dakota, where he remained until January 6, 2009. Carlsen produced no evidence showing that he did not have access to adequate legal resources there. Don Redmann, the Warden of that facility, testified that all inmates had access to books including federal statutes until April 2008. At that time, the facility replaced its books with online access to a Lexis-Nexis database, including federal and state statutes and case law, rules, and forms. Carlsen suggested he did not have adequate access because there are many inmates and only a few can use the library at one time. He produced no evidence, however, suggesting that he sought access, much less that he was frustrated in his attempts to obtain it. In fact, Carlsen testified that he relied on another inmate to prepare a postconviction petition for filing in state court and did not himself make any attempt to use the law library for any purpose.

9

The Court finds Carlsen had access to adequate legal resources and did not attempt to avail himself of them.

Carlsen had adequate access to legal resources from November 26, 2007, until December 3, 2007, and from December 7, 2007, through January 6, 2009. He failed to avail himself of those resources. Neither a lack of available resources nor his transfer "altogether prevented" him from presenting his claims to any court between November 26, 2007, and January 6, 2009.

## ii). <u>Conduct of Counsel</u>

If Branom's conduct violated the Constitution or laws of the United States, then Carlsen would be entitled to a later start date on that basis under 28 U.S.C. § 2255(f)(2). However, Branom's role as appointed counsel terminated at the expiration of Carlsen's time for filing a notice of appeal. 18 U.S.C. § 3006A(c) (providing that representation extends "from [the defendant's] initial appearance . . . through appeal, including ancillary matters appropriate to the proceedings"); 18 U.S.C. § 3006A(a)(2)(B) (authorizing discretionary appointment of counsel under § 2255); Rules 6(a), 8(c), Rules Governing § 2255 Proceedings (authorizing appointment of counsel for effective discovery and requiring appointment for evidentiary hearing); <u>United States v. Stocks</u>, 104 F.3d 308, 312-13 (9th Cir. 1997) (holding that "ancillary matters" terminate when appeal terminates); <u>United States v.</u>

Whitebird, 55 F.3d 1007, 1010-11 (5th Cir. 1995) (surveying cases and holding that "ancillary matters" do not include post-judgment motions, such as motions for new trial); Miranda v. United States, 455 F.2d 402, 404 (2d Cir. 1972) (holding that § 2255 motions are not included among "ancillary matters") (citing decisions under earlier version of statute and H.R. Rep. No. 91-1546 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3982, 3989); see also Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (holding that Sixth Amendment right to counsel extends through first direct appeal as of right and no further). Branom violated neither the laws nor the Constitution of the United States. 28 U.S.C. § 2255(f)(2) does not apply. 28 U.S.C. § 2255(f)(3) by its terms does not apply to the facts of this case. Nor does 28 U.S.C. § 2255(f)(4). This latter section refers to "the date on which the facts supporting the claim" – as opposed to the legal basis of the claim – "could have been discovered through the exercise of due diligence." Carlsen's § 2255 motion asserts that Branom was ineffective at sentencing for failing to identify U.S.S.G. § 5G1.3 as relevant to his case. Facts supporting this claim were known, at the latest, at the conclusion of the sentencing hearing, even if neither Carlsen nor Branom nor anyone else appreciated their legal significance at the time. See e.g., Shannon v. Newland, 410 F.3d 1083, 1089 (9th Cir. 2005) (discussing Johnson v. United States, 544 U.S. 295 (2005)); Battles, 362 F.3d at 1198.

11

### iii).    **Conclusion**

28 U.S.C. § 2255(f)(1) applies. The federal limitations period commenced on November 29, 2007. Carlsen had to file his § 2255 motion on or before December 1, 2008, because November 29, 2008, was a Saturday. Fed. R. Civ. P. 6(a)(1)(C). Carlsen testified that he mailed his motion to the Clerk of Court. His filing date is the date he placed the motion in the control of prison authorities for mailing, that is, April 3, 2009. Houston v. Lack, 487 F.3d 266, 270 (1988); Stillman, 319 F.3d at 1201; Mot. § 2255 (Doc. 32) at 7. Absent equitable tolling, Carlsen filed his motion 123 days too late.

### B.    **Equitable Tolling**

The next question is whether Carlsen is entitled to equitable tolling. He is not.

Equitable tolling "soften[s] the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004). "Equitable tolling is justified in few cases." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). "The threshold for obtaining equitable tolling is very high," Townsend v. Knowles, 562 F.3d 1200, 1205 (9th Cir. 2009), *abrogated on other grounds by* Walker v. Martin, ___ U.S. ___, 131 S. Ct. 1120, 1124-25 (2011), "lest the exceptions swallow the rule," Miranda, 292 F.3d at 1066; Spitsyn, 345 F.3d at 799. As the Third Circuit put it, equitable tolling is

12

appropriate "only when the principles of equity would make rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998) (following Beeler, 128 F.3d at 1289).

A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, ___ U.S. ___, 130 S. Ct. 2549, 2562 (2010). The merits of a prisoner's claims for relief have no bearing on the equitable tolling inquiry.

### i). "Extraordinary Circumstance"

An "extraordinary circumstance" is something "external" to the prisoner or "beyond his direct control." Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011) (brackets omitted). "[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008) (discussing Mendoza v. Carey, 449 F.3d 1065, 1069-70 (9th Cir. 2006)) (finding an extraordinary circumstance where Spanish-speaking prisoner had no access to translator or Spanish-

13

language materials).[4]

###### a. **Attorney Error vs. Egregious Attorney Misconduct**

An attorney, as an agent, is generally deemed to be within his prisoner-client's control. As a result, a prisoner's untimely filing will not be excused if the delay was caused by "his or her counsel's 'own mistake.'" Velasquez, 639 F.3d at 969 (*quoting* Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). In some circumstances, however, an attorney's *misconduct* – as opposed to attorney *error* – may show that the attorney has ceased to be a true agent of the prisoner. See Holland, 130 S. Ct. at 2565-66 (detailing prisoner's attempts to correct attorney's inaction and noting attorney's multiple violations of "fundamental canons of professional responsibility"). As the Supreme Court recently said, if the facts show that counsel abandoned a prisoner-client, "[c]ommon sense dictates that a litigant cannot be held

---

[4] The Ninth Circuit has suggested a distinction between attorney misconduct in state proceedings and misconduct in federal proceedings. See e.g., Doe v. Busby, 661 F.3d 1001, 1014 (9th Cir. 2011) (distinguishing Schlueter v. Varner, 384 F.3d 69, 76 (3d Cir. 2004), in part on the ground that "Doe is not seeking federal tolling based on bad legal advice in another proceeding," and *citing* Holland, 130 S. Ct. at 2563). The Holland Court appears to have been distinguishing procedural default from equitable tolling in the context cited by Doe. 130 S. Ct. at 2563. Schlueter was not a procedural default case. Procedural default in § 2254 cases necessarily "implicate[s] a state court's interpretation of state law," Holland, 130 S. Ct. 2563, while equitable tolling does not. In that sense, Holland was an easier case than Maples. This Court sees no reason to recognize egregious attorney misconduct as an "extraordinary circumstance" if it occurs in a federal proceeding but not in a state proceeding, provided the other requirements for the doctrine's application are met. But, regardless, the contours of any such distinction need not be determined in this case, because it involves a *federal* prisoner's claim to equitable tolling under § 2255.

14

constructively responsible for the conduct of any attorney who is not operating as his agent in any meaningful sense of that word." Maples v. Thomas, ___ U.S. ___, 132 S. Ct. 912, 923 (2012) (*quoting* Holland, 130 S. Ct. at 2568 (Alito, J., concurring)).[5]

Generally, an error by an agent-attorney is not an extraordinary circumstance. "In virtually every case where the issue of equitable tolling comes up[,] one or more attorneys should have acted with more dispatch, but more than that is required." Chavez v. Secretary, Fla. Dep't of Corrections, 647 F.3d 1057, 1071 (11th Cir. 2011). "'[A] garden variety claim of excusable neglect,' such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Holland, 130 S. Ct. at 2564 (*quoting* Irwin v. Department of Veterans' Affairs, 498 U.S. 89, 96 (1990)). Mistaken belief that the limitations period will be equitably tolled also does not support equitable tolling, even if the mistake is reasonable and made in good faith.[6]

---

[5] Maples concerns procedural default, not equitable tolling, but the Court expressly applied its reasoning in Holland to conclude that a lawyer who has abandoned a client's case without giving notice to the client is no longer the prisoner-client's agent, and the lawyer's acts and omissions may not be attributed to the prisoner-client. See Maples, 132 S. Ct. at 923. Likewise, Manning v. Foster, 224 F.3d 1129 (9th Cir. 2000), and Jamison v. Lockhart, 975 F.2d 1377 (8th Cir. 1992), cited below, are procedural default cases, but Maples recognizes that their reasoning may be applied to equitable tolling cases.

[6] See Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (holding, in a capital case, that an attorney's mistaken belief that limitations period was tolled was not an extraordinary circumstance); Miranda, 292 F.3d at 1067-68 (holding that mistaken statement of filing deadline by appointed appellate counsel was not an extraordinary circumstance); Malcom v. Payne, 281 F.3d 951, 963 (9th Cir. 2002) (no tolling where attorney believed pending clemency petition would toll federal

15

By contrast, even if a prisoner is diligent, serious misconduct by an attorney over a significant period of time might prevent the prisoner from accurately assessing the attorney's performance or non-performance and might mislead the prisoner to continue placing his trust in the attorney. Some instances of this kind of misconduct feature outright lies by an attorney. These cases meet even the high standard the Holland Court rejected as "too rigid," that is, they show "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." 130 S. Ct. at 2563. See e.g., United States v. Martin, 408 F.3d 1089, 1090-91, 1095 (8th Cir. 2005), *cited with approval in* Holland, 130 S. Ct. at 2564 (attorney repeatedly insisted he had filed a petition when he had not); Elvik v. Attorney General, 336 Fed. Appx. 626, 628 (9th Cir. 2009) (unpublished mem. disp.) (equitable tolling appropriate where attorney repeatedly misinformed prisoner that state court had not

---

limitations period); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (holding that "miscalculation of the limitations period by Frye's counsel and his negligence in general do not constitute extraordinary circumstances"). See also Brown v. Shannon, 322 F.3d 768, 773-74 (3d Cir. 2003) (no extraordinary circumstance where attorney withdrew from representation less than a month before filing deadline); Johnson v. Hendricks, 314 F.3d 159, 162-63 (3d Cir. 2002) (attorney's advice that federal habeas petition must be filed within one year after completion of state postconviction proceedings was not extraordinary circumstance); Cousin v. Lensing, 310 F.3d 843, 849-50 (5th Cir. 2002) (no extraordinary circumstance where counsel did not receive notice of denial of motion to proceed in forma pauperis and did not check status of motion for two years); Beery v. Ault, 312 F.3d 948, 950, 951 (8th Cir. 2002) (no extraordinary circumstance where counsel told prisoner he was preparing a postconviction petition, then clarified he was only attempting to get appointed by the court, and did not tell prisoner that court did not appoint him until six months after the appointment was denied); Harris v. Hutchinson, 209 F.3d 325, 331 (4th Cir. 2000) (mistake by prisoner's counsel in interpreting statute of limitations is not an extraordinary circumstance).

16

yet ruled, retained case file despite requests for it from new counsel, and was addicted to prescription medications); Robertson v. Simpson, 624 F.3d 781, 782-83, 784-86 (6th Cir. 2010) (remanding for a hearing where attorney was arrested in cocaine sale, was indicted, pled guilty, and shut down his practice within two-month period straddling the filing deadline and, during the period of his cocaine use, incorrectly advised prisoner about the filing deadline); Downs v. McNeil, 520 F.3d 1311, 1322-23 (11th Cir. 2008) (attorney told prisoner state petition had been filed when it had not); United States v. Wynn, 292 F.3d 226, 228-29 (5th Cir. 2002) (for sixteen months, attorney repeatedly told prisoner and his family he had filed when he had not). Cf. also Manning v. Foster, 224 F.3d 1129, 1133-35 (9th Cir. 2000) (remanding for evidentiary hearing to determine whether "attorney's failure to act" was "caused by his own self-interest"); Jamison v. Lockhart, 975 F.2d 1377, 1380-81 (8th Cir. 1992) (holding that trial counsel's conflict of interest could excuse procedural default if it also prevented counsel from raising claim in state postconviction proceedings), *cited in* Manning, 224 F.3d at 1133.

Some instances of attorney misconduct involve action or inaction by the attorney that directly interferes with or obstructs the prisoner's ability either to file himself or to retain new counsel to protect his interests. Holland is in this category. There Holland's attorney failed to tell him when state court proceedings concluded.

Holland had previously advised his attorney immediately to file his § 2254 petition on completion of the state proceedings, but his attorney ignored him. When Holland moved the court to relieve his attorney for nonperformance, the motion was "successfully opposed by the State on the perverse ground that petitioner failed to act through appointed counsel." 130 S. Ct. at 2568 (Alito, J., concurring). See also Spitsyn, 345 F.3d at 801 (attorney fired by prisoner retained case file, despite persistent demands for it, throughout the limitations period and two months beyond), *cited with approval in* Holland, 130 S. Ct. at 2564; Doe v. Busby, 661 F.3d 1001, 1009-10, 1012 (9th Cir. 2011) (attorney failed to file on time, although prisoner repeatedly wrote to him for three years urging him to do so, and when attorney finally "fired" the client, he retained the file for another six months); Porter v. Ollison, 620 F.3d 952, 956-57, 960 (9th Cir. 2010) (attorney retained file for a year and a half after prisoner began demanding its return); Fleming v. Evans, 481 F.3d 1249, 1256-57 (10th Cir. 2007) (client timely mailed *pro se* petition to attorney, asking him to reformat it and forward it to the court for filing within days, but attorney did not do so for another two weeks).

Finally, in some cases, the attorney does not misstate facts and does not engage in conduct, such as retaining documents, that actually prevents the prisoner from acting for himself, but in fact abandons the case, and the prisoner has no objective

18

reason to believe the attorney is no longer acting for him. This was the situation in Maples. There, the prisoner had 42 days to file a notice of appeal. During that time, he believed he was represented by counsel, and the record showed that he was. In fact, his attorneys had left their previous employment without doing anything at all to advise their client of their departure or to protect his interests. But, because the court's records identified counsel, the prisoner himself was not served by the court clerk with a copy of the court's order. And after the law firm discovered its attorneys' misconduct, its own conflict of interest led it to fail to point out attorney misconduct as cause for Maples' untimely notice of appeal. Maples, 132 S. Ct. at 924-27 & nn. 8-12. See also Beeler, 128 F.3d at 1289 (prisoner's original counsel accepted a job in another state and withdrew from representation near the filing deadline, leaving behind work product that was "not usable by replacement counsel"), *cited with approval in* Holland, 130 S. Ct. at 2564; Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) (attorney instructed to "file a 2255" did no legal research to find out what that was, represented that a motion was in preparation but filed only a motion unsupported by authority, interacted only with a friend of the prisoner and not the prisoner himself, and failed to keep his client informed of what was happening throughout the limitations period), *cited with approval in* Holland, 130 S. Ct. at 2564;

Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001) (remanding[7] for a hearing where attorney appointed to represent the prisoner in state court failed to inform the prisoner of final action by the state courts, misled him into believing she would file a federal habeas petition, and told him there were no time limits), *cited with approval in* Holland, 130 S. Ct. at 2564; Ramos-Martinez v. United States, 638 F.3d 315, 323-24 (1st Cir. 2011) (remanding for hearing where Spanish-speaking prisoner alleged that paralegal paid to assist with preparing a § 2255 motion failed to respond to phone calls and did not file motion); Dillon v. Conway, 642 F.3d 358, 363-64 (2d Cir. 2011) (*per curiam*) (attorney repeatedly and specifically promised he would file before the last day of the limitations period to avoid a last-day filing error, but he filed on what he believed to be the last day, which, due to his miscalculation, was actually the day after the limitations period expired; note that the court here characterized the question as "a close one").

On the other hand, if a prisoner could reasonably be expected to act to protect his own interests, an attorney's apparent abandonment of the case has been held not an extraordinary circumstance supporting equitable tolling. In Schlueter v. Varner, 384 F.3d 69 (3d Cir. 2004), *distinguished by* Doe, 661 F.3d at 1014, for instance, a

---

[7] On remand, a magistrate judge found facts similar to those in Martin and Downs – lengthy periods of time in which counsel's statements to prisoner-client ranged from misleading to false. See Nara v. Frank, Civil Action No. 99-5, 2004 WL 825858 at *6-*9 (W.D. Pa. Mar. 10, 2004).

20

prisoner claimed he was misled by what his attorney said he would do. But he was not misled as to what the attorney had in fact done, and he could have found out for himself whether the attorney had done what he promised at a time when the prisoner could still have filed a timely *pro se* petition. The court held that there was no extraordinary circumstance and no causal connection between the attorney's conduct and the prisoner's failure to file on time. Schlueter, 384 F.3d at 76-77; see also Doe, 661 F.3d at 1014 (distinguishing Schlueter on the grounds that it "did not involve an attorney affirmatively misrepresenting the status of a case to assuage his doubting client"). In Cordle v. Guarino, 428 F.3d 46, 48-49 (1st Cir. 2005), the court found no extraordinary circumstance where the prisoner alleged her trial counsel should have filed a petition for habeas corpus, or at least advised her of the filing deadlines, noting specifically that "[t]his is not a case where Cordle asked her counsel to file a habeas petition but counsel failed to do so." Id. at 48-49. And in Hunter v. Galaza, 366 Fed. Appx. 766 (9th Cir. 2010) (unpublished) the court held there was no extraordinary circumstance where an attorney failed to advise a prisoner of a state court's ruling and also moved his office without notifying the prisoner, thus frustrating the prisoner's attempts to contact him. Id. at 767.

Having considered each of these precedents, as well as the parties' exhibits and the testimony at the hearing, this Court finds the following facts:

1.  Carlsen's understanding of Branom's letter of November 20, 2007, <u>see</u> Def. Ex. A (Doc. 68-1 at 3-4), was consistent with Branom's statements in the letter, but the letter does not resolve anything material to the question at hand;

2.  On January 18, 2008, Carlsen wrote a letter to Branom, Def. Ex. B (Doc. 68-1 at 5), but Branom did not respond;

3.  Carlsen did not contact Branom again until May 7, 2008;

4.  Branom spoke with Carlsen by telephone twice in May 2008, once in June, once in September, and once in December 2008;

5.  Branom did not tell Carlsen that a § 2255 motion would be filed on his behalf, because, as Branom said, trial counsel's conduct is typically questioned in such a motion, and it would be inappropriate for trial counsel to file it;

6.  Branom did not tell Carlsen he could wait until he was in federal custody to file a § 2255 motion, because, just as Branom said, that advice would be wrong;

7.  Carlsen did not testify either that he asked Branom to file a § 2255 motion for him or that he believed Branom would do so; and

8.  Based on both Carlsen's and Branom's testimony, the Court finds that

22

conversations between them centered on the question of credit for time served, a fact that is particularly important.

The Bureau of Prisons, not the sentencing court, calculates credit for time served. <u>United States v. Wilson</u>, 503 U.S. 329, 333 (1992); 18 U.S.C. § 3585(b). <u>See also</u> 18 U.S.C. § 3585(a); <u>Taylor v. Reno</u>, 164 F.3d 440, 445-46 (9th Cir. 1998). 28 U.S.C. § 2241 provides a remedy for federal prisoners who challenge the Bureau of Prisons' calculation of their sentences, including the matter of credit for time served. A habeas petition must be filed in the District where the prisoner is incarcerated.[8] Indeed, Branom testified that he gave Carlsen contact information for the Federal Defenders of the Dakotas while Carlsen was incarcerated in North Dakota. Carlsen could, without prejudicing his position, wait until he was in federal custody to file an administrative grievance or a habeas petition under 28 U.S.C. § 2241 regarding the calculation of his sentence. The Court finds that, to the extent

_____

[8] See e.g., <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 435, 443 (2004); <u>Allen v. State of Oregon</u>, 153 F.3d 1046, 1049-51 (9th Cir. 1998) (petition had to be construed under 28 U.S.C. § 2241 and so was served on wrong respondent); <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 895 n. 2 (9th Cir. 1996) ("Cases involving habeas petitions by federal prisoners fall under section 2241, are less frequent and often challenge administration of parole, computation of good time credit, prison conditions and deportation or exclusion.") (<i>citing</i> James S. Liebman & Randy Hertz, <i>Federal Habeas Corpus Practice and Procedure</i> § 41.2 (2nd ed. 1994)); <u>Tyler v. United States</u>, 929 F.2d 451, 453 n. 5 (9th Cir. 1991) (federal prisoner convicted in District of Columbia challenged denial of credit for time spent on parole under § 2241); <u>Tucker v. Carlson</u>, 925 F.2d 330, 331-32 (9th Cir. 1991) (federal prisoner's challenge to duration of confinement must be made under § 2241); <u>United States v. Giddings</u>, 740 F.2d 770, 772 (9th Cir. 1984) (affirming denial of motion under § 2255 where petitioner sought credit for time served before sentencing on grounds that current custodian was proper respondent under § 2241).

23

Branom mentioned "waiting to file" at all, he told Carlsen he could wait to file a habeas petition or an administrative grievance until he arrived in federal custody. This finding is consistent with Carlsen's own *pro se* § 2255 motion. See Mot. § 2255 Ex. A (Doc. 32-1 at 1) ("When I finally did talk to him, he advised me to wait until I re-entered Federal custody to pursue relief. He told me that the Bureau of Prisons would be able to correct the errors in my sentence.").

Branom testified he believed Carlsen could *not* wait until he was in federal custody to file a § 2255 motion, and, consequently, he would not have given Carlsen that advice. Bad advice on this point would not constitute an extraordinary circumstance anyway, e.g., Lawrence, 549 U.S. at 336-37. However, the Court finds that Branom did not tell Carlsen he could wait until he was in federal custody to file a § 2255 motion. He told Carlsen he could wait to file a § 2241 petition or an administrative grievance.

Branom and Carlsen discussed § 2255. Branom believed the subject first arose in December 2008 or January 2009, Carlsen earlier, in June or September 2008. Regardless, the Court finds that, because Branom and Carlsen were discussing credit for time served, if § 2255 was mentioned in June or September 2008, it was within the context that Branom informed Carlsen that § 2255 was not a viable option for obtaining credit for time served, then focused on § 2241 and gave Carlsen the contact

information for the Federal Defenders of the Dakotas. Branom's advice and actions, in context, were not wrong. Carlsen produced no evidence whatsoever – and did not even allege – that Branom actually perceived and withheld from his client the knowledge that Carlsen could make a claim under 28 U.S.C. § 2255 based on Branom's failure to identify the application of U.S.S.G. § 5G1.3(b). *Cf.* Manning, 224 F.3d at 1133-35. That would indeed be an extraordinary circumstance, but there is absolutely no evidence of it here.

Carlsen also claimed he telephoned the Federal Defenders of Montana approximately fifteen times, only to have them "hang up" or refuse his calls. But he clarified, on cross-examination, that this conduct occurred between January 6, 2009, and February 18, 2009, while he was detained at the Stutsman County Jail in North Dakota. Gov't Ex. 1. Branom's office sent to Carlsen's mother's address a "packet of information pertaining to 28 U.S.C. § 2255" on February 12, 2009. Def. Ex. C (Doc. 52-1 at 4). Testimony from the Chief Federal Defender of Montana showed that a call from a detention center is not accepted if the attorney is not available, but the attorney is told of the attempted contact. Branom testified he was not advised of any of the alleged fifteen attempted contacts but spoke with Carlsen in February 2009. Carlsen produced no evidence from anyone at the Stutsman County Jail on this point. At any rate, assuming there was a five-week delay in contact between Branom

and Carlsen, there was no egregious misconduct. The Court finds that Branom would have sent a packet of information within a reasonable period of time after he knew Carlsen wanted it. Carlsen's claim that he telephoned fifteen times but his call was refused each time was totally lacking in credibility. Branom was not told about any of those occasions. Had they all occurred between January 6 and February 18, 2009, as Carlsen claimed, it is inconceivable that no one would have told Branom. The Court finds that, because the information was sent on February 12, 2009, it was requested only shortly before. Further, the limitations period had already expired on December 1, 2008, more than a month before the earliest date when Carlsen could have been frustrated in his claimed attempts to contact Branom.

In no sense of the word did Branom "abandon" Carlsen. He spoke with Carlsen several times about credit for time served. He directed Carlsen to attorneys who were appropriately situated to assist him with that issue. When the subject of § 2255 arose, Branom gave advice that was correct in context, and when Carlsen requested a form or information about § 2255, it was promptly sent to his mother's address at his request.

Further, Branom did not knowingly engage in misconduct. Branom erred only in failing – along with the prosecutor, and the probation officer, all of whom are charged with making a correct guideline calculation – to identify the potential

26

application of U.S.S.G. § 5G1.3. Carlsen, in effect, claims that he is entitled to equitable tolling because the attorney he accuses of error failed both to realize his error and to tell Carlsen about it within the limitations period under 28 U.S.C. § 2255(f)(1). This, in turn, is nothing more than a contention that time must be tolled if a prisoner's claim of ineffective assistance may have merit. That is not the law. Branom's conduct was unexceptional and did not constitute an extraordinary circumstance.

### b.  Access to Legal Resources

As set forth above, jails and prisons must provide prisoners "with adequate law libraries or adequate assistance from persons trained in the law" to allow them to formulate collateral challenges to sentences and convictions or to challenge the conditions of their confinement. If the legal resources available to a prisoner do not meet these basic requirements, the prisoner may show an extraordinary circumstance to support equitable tolling. Ramirez, 571 F.3d at 998 (stating that a prisoner's "denial altogether of access to his personal legal papers . . . *may* warrant equitable tolling" (emphasis in original)); Espinoza-Matthews v. California, 432 F.3d 1021, 1027-28 (9th Cir. 2005) (noting that "it is unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period without access to his legal file" and holding limitations period equitably tolled for

that time) (internal quotation marks omitted); Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002) (remanding for hearing where prisoner filed 7 days too late but was twice transferred from state prison to local jail, for a total of 82 days, and was not permitted to take his habeas file with him); Whalem/Hunt, 233 F.3d at 1149 (remanding for hearing where "petitioner stated that the law library of the prison in which he is incarcerated did not have legal materials describing AEDPA" and so had no notice of the limitations period) (Tashima, J., concurring).[9]

But temporary and routine deprivations of access may not be a severe obstacle to a prisoner who is truly "endeavoring to comply with AEDPA's limitations period." Diaz, 515 F.3d at 154. See e.g., Ramirez, 571 F.3d 993 ("[o]rdinary prison limitations on Ramirez's access to the law library and copier" do not constitute extraordinary circumstance); Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001) (per curiam), rev'd on other grounds, 295 F.3d 1046 (9th Cir. 2002) (en banc) (prisoner's 27-day lack of access to case materials during a prison transfer did not warrant equitable tolling); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013-14 (9th Cir. 2009) (prisoner required to keep multiple boxes of case materials in storage still could

---

[9] These cases contradict the statement in Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir. 2005), that "[e]ach of the cases in which equitable tolling has been applied have involved *wrongful* conduct" (emphasis in original). Neither transferring a prisoner nor restricting his access to his property is "wrongful."

have filed on time because he was "allowed to retain three boxes of legal materials");
Marsh v. Soares, 223 F.3d 1217, 1221 (10th Cir. 2000) (closing of prison library on
15 of last 36 days to file was not "extraordinary"), *cited in* Allen, 255 F.3d at 801.

The Court of Appeals stated that "Carlsen alleges, and the government does not
dispute, that he was in transit and without access to legal resources for the first six
months of his sentence." Mem. at 4, Carlsen, No. 09-35857; see also Mot. § 2255
Att. A (Doc. 32-1) at 1. At the evidentiary hearing, Carlsen changed his position to
state that he was deprived of access to legal resources for three months in 2008 and
for an additional three months in 2009. All of these allegations are false.

Based on the parties' exhibits and the testimony at the hearing, the Court finds
that Carlsen had access to adequate federal and state legal materials from November
26, 2007, until December 4, 2007, while he was at Crossroads Correctional Center
in Shelby. He also had access while he was at the Federal Transfer Center in
Oklahoma awaiting further transport, from December 6, 2007, until January 8, 2008.
Gov't Ex. 6 at 2 ¶ 5. On January 8, 2008, Carlsen arrived at the James River
Correctional Center in North Dakota. From that date until April 2008, Carlsen had
access to books, including federal statutes, and from April 2008 until January 6, 2009.
In addition, he also had online access to a Lexis-Nexis database, including federal and
state statutes and case law, rules, and forms.

Carlsen lacked access to legal resources only from the date of his sentencing, November 15, 2007, to November 25, 2007, and from December 4 to December 6, 2007, a total of fourteen days, inclusive. The first eleven of those days came and went before the limitations period commenced.

Carlsen produced no testimony or evidence regarding legal resources at the Stutsman County Jail in North Dakota, where he was detained between January 6, 2009, and February 18, 2009. Carlsen produced only his own testimony that he lacked access to legal resources at Grady County, in Oklahoma, when he was housed there awaiting transit to USP Florence from mid-February 2009 until March 5, 2009. Gov't Ex. 1. In light of his failure even to request access to the law library at other facilities, however, his testimony is not sufficient to show that Grady County lacked adequate legal resources. Regardless, the limitations period had already expired by the time Carlsen was placed at Stutsman County and, thereafter, at Grady County.

Neither Carlsen's transfers nor any lack of access to legal materials constituted extraordinary circumstances capable of preventing a reasonably diligent prisoner from obtaining access to adequate legal resources. Carlsen produced no evidence at all to show that the legal resources available to him were not sufficient in themselves to apprise him of 28 U.S.C. § 2255 or the Sentencing Guidelines.

30

####c. **Causal Connection**

Even where an extraordinary circumstance exists, the Court must still consider whether a prisoner "could reasonably have been expected" to file his federal petition on time after the extraordinary circumstance ceased. Lott, 304 F.3d at 923; see also Id. at 926 (McKeown, J., concurring in the judgment) (pointing out and disagreeing with the majority's requirement of such a showing). The petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." Ramirez, 571 F.3d at 997 (internal quotation marks & citations omitted); see also, e.g., Porter, 620 F.3d at 959 (remanding for hearing where "further development of the facts may ultimately show" that attorney's "egregious conduct did not prevent Porter from filing a timely federal petition"); Randle v. Crawford, 604 F.3d 1047, 1055 (9th Cir. 2010) (prisoner requested case file from attorney for purpose of preparing state petition, not federal petition, so attorney's delay in providing case file did not cause untimely federal filing); Beery, 312 F.3d at 950, 951 (attorney's six-month delay in providing information about case status did not cause untimely filing because prisoner did not file for another four months after that); Allen, 255 F.3d 801 (prisoner's 27-day lack of access to case materials during a prison transfer, which "began a mere one month into [the] limitations period," left the prisoner "with the better part of the limitations

period in which he could have filed"); Marsh, 223 F.3d at 1221 (closing of prison library on 15 of last 36 days to file did not cause untimely filing because "the claims [the prisoner] was asserting were the same as those already presented" in state court), *cited in* Allen, 255 F.3d at 801; Fisher v. Johnson, 174 F.3d 710, 715-16 (5th Cir. 1999) (extraordinary circumstance of mental incompetency did not cause untimely filing because prisoner "still had over six months to complete his federal habeas petition" after period of incompetency ceased), *cited in* Allen, 255 F.3d at 801. "[T]he issue of when grave difficulty merges literally into 'impossibility' should be resolved in [the prisoner's] favor." Lott, 304 F.3d at 925.

The facts show that Carlsen had access to adequate legal resources for *362 days* out of the 365-day limitations period. That is ample time. Further, as in Allen, the three days when Carlsen did not have access to legal materials occurred within the first week of the limitations period, leaving him "with the better part of the limitations period in which he could have filed." Allen, 255 F.3d at 801.

### d. **Diligence**

As the Court of Appeals found, Carlsen undoubtedly exercised reasonable diligence in filing his § 2255 motion within thirty days after, as he testified, he read the Sentencing Guidelines for the first time, in March 2009. But the question at this point in the analysis is whether he exercised reasonable diligence between the date

32

the limitations period commenced, on November 29, 2007, and the date it expired absent equitable tolling, on December 1, 2008. He did not.

"The purpose of requiring a habeas petitioner to show diligence is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file." Doe, 661 F.3d at 1012-13. "[T]he district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances?*" Id. at 1013 (*quoting* Baldayaque, 338 F.3d at 153 (emphasis in Baldayaque)).

Carlsen testified that he did not ask Branom to prepare a § 2255 motion or a habeas petition on his behalf. Carlsen also testified that Branom repeatedly promised but failed to send him information about § 2255. This Court does not believe Carlsen's testimony. Before late January or early February 2009, discussions between Carlsen and Branom centered on the Bureau of Prisons' calculation of Carlsen's sentence and a habeas petition under 28 U.S.C. § 2241, not a motion under 28 U.S.C. § 2255. Further, the Court finds Branom and Carlsen did not discuss § 2255 until Carlsen had been relocated from the James River Correctional Facility to Stutsman County, on or after January 6, 2009. Branom sent information within a reasonable time after Carlsen requested it. And when Carlsen filed, he did not even use the form Branom sent. He used a form from the District of Maryland. Neither this Court nor,

according to the testimony at the hearing, the Federal Defenders of Montana mails out forms developed for use in the District of Maryland. The suggestion is not credible.

Moreover, even if Carlsen's testimony were creditable which it is not, and if Branom repeatedly promised and repeatedly failed to send information about § 2255, which is not shown, it would still be perfectly reasonable to expect a prisoner to attempt to obtain access to the legal resources placed at his disposal in prison law libraries. That is why those resources are there. Carlsen not only had adequate access to adequate law libraries, but Branom also gave him contact information for other counsel better situated to assist him with the issue of credit for time served. Yet Carlsen produced no evidence that he contacted the Federal Defenders of the Dakotas. He produced no evidence, indeed did not even allege, much less testify, that he attempted to obtain access to the law libraries at Crossroads, at James River, or at FTC Oklahoma City. Notably, Carlsen testified he relied on another inmate to file a postconviction petition in North Dakota state court and did not use the law library himself. Carlsen testified that no one told him legal resources were available in Oklahoma City, but he did not testify that he asked whether they were available. Carlsen testified that the librarian at Crossroads told him the facility was not required to provide federal resources, but again, he did not testify to what he asked the librarian. The Court finds that Carlsen made no attempt whatever to avail himself of

34

the legal resources available to him throughout 362 days of the limitations period. Carlsen was not reasonably diligent *until* March 2009, three months after the limitations period had already expired.

### e. **Conclusion**

Carlsen shows no extraordinary circumstance. Branom's conduct was reasonable and did not constitute misconduct, much less egregious misconduct. Carlsen also had sufficient access to adequate legal resources for all but three days of the entire limitations period.

Moreover, although the Court finds that Branom did not delay in sending Carlsen information about § 2255 when Carlsen requested it, there is no evidence to support a finding that Carlsen knew or believed Branom would act for him in filing a § 2255 motion. Merely by walking into the law library at the James River Correctional Facility, Carlsen could have discovered and complied with § 2255 well within the limitations period. Even if there had been some extraordinary circumstance in Branom's actions, it was not that circumstance but Carlsen's own failure to act with reasonable diligence which caused him to file too late. Doe, 661 F.3d at 1012-13.

Carlsen's motion under 28 U.S.C. § 2255 is time-barred.

## CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (*citing* Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Lambright v. Stewart, 220 F.3d 1022, 1026 (9th Cir. 2000) (*quoting* Slack, 529 U.S. at 484).

While Carlsen satisfies the standard of 28 U.S.C. § 2253(c)(2), there is no room for reasonable jurists to debate the time bar. Carlsen had adequate access to adequate law libraries for 362 of the 365 days of the limitations period. Nor did his attorney mislead or abandon him in any way. Counsel's only failure was his failure to identify the application of U.S.S.G. § 5G1.3(b). To hold that Carlsen is entitled to equitable tolling on the basis of that error is to hold that equitable tolling applies if a claim for

relief has merit. That is not the law.

## CARLSEN'S SENTENCE

The decision that Carlsen's § 2255 motion is time barred and that he is not entitled to equitable tolling of the § 2255 filing deadline ordinarily would oblige this Court to conclude that it lacks jurisdiction to consider this matter any further. See Jiminez v. United States, 2011 WL 2580326 *2 (M.D. Fla.) (court lacked jurisdiction to consider time-barred § 2255 motion absent equitable tolling); Lee v. United States, 2010 WL 3270044 *3 (C.D. Ill.) (absent equitable tolling, court without jurisdiction to hear time-barred § 2255 motion). The Court is mindful, however, that it has been directed to "state what sentence it would have imposed if it had granted Carlsen's § 2255 motion,"[10] and it will undertake to do so.

If the § 2255 motion had been granted, the matter would have been set for re-sentencing. Such a procedure would require, at minimum, an updated presentence report, an opportunity for the parties to submit new sentencing memoranda and a new sentencing hearing at which evidence, if relevant and appropriate, could be introduced, and issues raised under 18 U.S.C. § 3355(a) could be addressed. No reasoned decision on what sentence may result from a re-sentencing could be made

---

[10] Mem. at 8, United States v. Carlsen, No. 09-35857 (9th Cir. July 6, 2011) *(per curiam)* (unpublished mem. disp.) (Doc. 47).

37

until those additional submissions are considered by the Court, and the new sentencing hearing is conducted. A status conference for the purpose of establishing a schedule to address and resolve such issues will be set by further order of the Court.

## ORDER

1.    Carlsen's motion to vacate, set aside, or correct sentence (Doc. 32) is DISMISSED with prejudice as time-barred.

2.    A certificate of appealability is DENIED.

3.    The Clerk of Court shall ensure that all pending motions in this case and in CV-09-33-GF-SEH are terminated, subject to final disposition by separate order of any remaining issues related to the question of "what sentence [this court] would have imposed if it had granted Carlsen's § 2255 motion."

4.    Promptly upon resolution of all issues the Clerk shall close the civil file by entering judgment in favor of the United States and against Carlsen.

DATED this _10th_ day of April, 2012.

SAM E. HADDON
United States District Judge